1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**

7                         **DISTRICT OF NEVADA**

8

9

10

11   PETER SZANTO,                        )
                                          )
12              Plaintiff,                )
                                          )
13        v.                              )          3:11-cv-00394-RCJ-VPC
                                          )
14                                        )              **ORDER**
     MARINA MARKETPLACE 1, LLC et al.,    )
15                                        )
                Defendants.               )
16   _____)

17        This case arises out of the alleged breach of fiduciary duties of Plaintiff's brother: a co-

18   beneficiary and co-trustee of family trusts.  Pending before the Court are a Motion to Recuse (ECF

19   No. 23), two Motions to Stay (ECF Nos. 27, 29), and a Motion to Dismiss (ECF No. 25).

20   **I.       FACTS AND PROCEDURAL HISTORY**

21        Plaintiff Peter Szanto and his brother Victor Szanto are beneficiaries and co-trustees of

22   various Szanto family trusts (the "Trusts"). (*See* V. Am. Compl. ¶¶ 9, 15–16, Oct. 8, 2013, ECF No.

23   17).  Defendants Marina Marketplace 1, LLC ("MM1") and Marina Marketplace 2, LLC ("MM2")

24   are Nevada limited liability companies whose sole members are Victor and his wife Eyve. (*See id.*

25   ¶¶ 10–11, 17–18).  Victor and Eyve formed MM1 and MM2 ten days after Peter's and Victor's

26   mother, Klara Szanto, passed away on December 2005. (*Id.* ¶¶ 19–19).[1]  After Klara's death, Victor

27   and Eyve overpowered the freewill of their father, Paul Szanto, in order to gain control of the Trusts.

28

     _____

          [1]The Verified Amended Complaint lists two paragraphs numbered "19." (*See id.* 3:12–16).

1   (*Id.* ¶¶ 20, 31).  Victor and Eyve used their control over the Trusts to purchase real property (the

2   "Real Property") in Nevada that now belongs to Defendants MM1 and MM2. (*Id.* ¶ 21).  Plaintiff

3   alleges that the purchases of the Real Property were made via "fraudulent transfers" of assets from

4   the Trusts. (*See id.* ¶¶ 23, 32).  Plaintiff also alleges that Victor breached his fiduciary duty as trustee

5   of the Trusts to obtain at least $3 million to purchase the Real property for the Defendants he

6   controls, and thus ultimately for his own benefit. (*Id.* ¶ 30).  Plaintiff also alleges that Victor Szanto

7   "loot[ed]" Paul Szanto's personal property worth at least $4 million, which may now also belong to

8   Defendants MM1 or MM2. (*See id.* ¶¶ 33–33).[2]

9       The affidavit Plaintiff attaches to the Verified Amended Complaint ("VAC") helps to explain

10  the source of the present family feud.  Plaintiff attests that before their mother Klara died, Victor

11  induced Plaintiff's son to sue Plaintiff in state court in California for the alleged failure to turn over

12  certain gifts made to Plaintiff's son by others during Plaintiff's son's childhood. (*See* Peter Szanto

13  Decl. ¶¶ 2–4, Oct. 6, 2013, ECF No. 17, at 13).  Plaintiff prevailed in those actions, but in the

14  meantime Victor and Eyve allegedly overpowered Paul's freewill in order to abscond with the

15  Trusts' assets. (*See id.* ¶ 6).  Plaintiff attests that Victor and Eyve conspired with one another to keep

16  the 86-year-old Paul "permanently drugged, confused and away from all means of communication

17  with anyone other than [themselves." (*See id.* ¶ 8; V. Am. Compl. ¶ 30).  Victor induced Paul to sign

18  a $3 million deed of trust. (*See* Peter Szanto Decl. ¶ 11).

19      Plaintiff sued Defendants MM1 and MM2 *in pro se* in this Court in diversity.  The Clerk

20  entered default against both Defendants, and Plaintiff asked the Court to enter default judgment.  The

21  Court denied the motion, because the Complaint as filed was not sufficient to support a claim.  That

22  is, page three of the Complaint was missing, and it appeared that crucial allegations concerning the

23  alleged wrongdoing, i.e., fraudulent transfer, were contained on that page in missing paragraphs

24  numbers fourteen through eighteen.  The Court ruled that Plaintiff must file an amended complaint

25  that included the relevant allegations and must attempt to serve that amended complaint upon

26  Defendants.  Defendant Marina Marketplace 2, LLC then filed a Motion to Set Aside Clerk's Default

27

28
    _____

    [2]The Verified Amended Complaint lists two paragraphs numbered "33." (*See id.* 7:2–10).

1  (ECF No 16), which the Court granted because Plaintiff did not timely respond and because the

2  Complaint was insufficient to state a claim.  The Court also ordered Plaintiff to show cause why the

3  Complaint should not be dismissed for lack of subject matter jurisdiction because there was doubt as

4  to complete diversity of the parties.

5       Plaintiff filed the VAC for fraudulent transfer, requesting the freeze of Defendants' assets,

6  the appointment of a receiver for Defendants, the establishment of a constructive trust in Defendants'

7  assets and eventual specific performance to transfer those assets to Plaintiff, as well as compensatory

8  and punitive damages.  MM2 has moved to dismiss the VAC.  Plaintiff has filed two motions to stay

9  and a motion to recuse.

10  **II.     DISCUSSION**

11       **A.     Motion to Recuse**

12       Plaintiff cites as evidence of bias the fact that the Court granted, rather than denying as moot,

13  MM2's motion to set aside the Clerk's entry of default after the Court had already done so in the

14  order denying Plaintiff's motion for a default judgment.  Assuming for the sake of argument that

15  denial as moot would have been more procedurally appropriate, neither ruling would have been

16  erroneous.  And even if the grant of a moot motion had been erroneous, internal legal error cannot

17  serve as the basis for a finding of bias in the context of recusal. *See Hasbrouck v. Texaco, Inc.*, 842

18  F.2d 1034, 1045–46 (9th Cir. 1987).

19       Plaintiff also argues that the Court showed bias in not ordering Defendants to show cause

20  why they should not be sanctioned under Rule 11 for filing a moot motion.  Plaintiff has filed no

21  motion for sanctions.  The Court has wide discretion in ordering sanctions.  Its refusal to order them

22  sua sponte does not reasonably indicate bias against the opposing party.  Bias might reasonably be

23  perceived in this context, for example, if the Court had ordered sanctions sua sponte against Plaintiff

24  for some infraction and then ignored a similar infraction by Defendants, but no party has been

25  sanctioned in this case.

26       Finally, Plaintiff argues that the Court showed bias by failing to grant him a default judgment

27  because a page was missing from the Complaint.  But the missing page was all-important in this

28  case.  Without that page, the Complaint did not sufficiently state a claim, and the strong policy of the

1   federal rules for determining issues on the merits counsels against default judgment in such

2   situations.  It is not a "disproportionate remedy" to deny judgment when the complainant has not

3   even made allegations establishing a prima facie case.  It would more likely be reversible error, in,

4   fact, to award a default judgment under such circumstances.

5          The Court has no bias as to any party in the case and denies the motion.

6          **B.      Motions to Stay**

7          Plaintiff asks the Court to stay the motion to dismiss while it determines and notifies Plaintiff

8   when his response is due.  The Court denies the motions, as the standard *pro se* notice has been

9   given, (*see* Mins., Oct. 31, 2013, ECF No. 26), and Plaintiff has since responded in any case.  The

10  rest of the motions are directed to the motion to dismiss itself.  The Court will consider the response

11  Plaintiff has filed.

12         In the second motion, Plaintiff asks the Court to stay because he has identified alleged

13  irregularities in MM2's filings with the Nevada Secretary of State and argues that the Secretary may

14  soon revoke MM2's LLC status or that it may have never had a proper existence as an LLC.  The

15  Court will not enter a stay.  The permissive amendment, *see infra*, will preserve Plaintiff's rights as

16  against the principals of MM2.  There is no purpose in staying the case in the meantime.

17         **C.      Motion to Dismiss**

18         MM2 asks the Court to dismiss based upon: (1) lack of subject matter jurisdiction, i.e., lack

19  of complete diversity; (2) insufficient service of process; and (3) the statute of limitations.  The Court

20  denies the motion.

21         **1.      Subject Matter Jurisdiction**

22         Federal courts are courts of limited jurisdiction, possessing only those powers granted by the

23  Constitution and statute. *See United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008) (citing

24  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  The party asserting federal

25  jurisdiction bears the burden of overcoming the presumption against it. *Kokkonen*, 511 U.S. at 377.

26  Federal Rule of Civil Procedure 12(b)(1) provides an affirmative defense for lack of subject matter

27  jurisdiction. Fed. R. Civ. P. 12(b)(1).  Additionally, a court may raise the question of subject matter

28  jurisdiction sua sponte at any time during an action. *United States v. Moreno–Morillo*, 334 F.3d 819,

830 (9th Cir. 2003).  Regardless of who raises the issue, "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citing 16 J. Moore et al., Moore's Federal Practice § 106.66[1], pp. 106–88 to 106–89 (3d ed. 2005)).

In diversity actions, all plaintiffs must be diverse from all defendants. *See, e.g.*, *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 380 (1978) (citing *Strawbridge v. Curtiss*, 78 U.S. 172 (1806)).  Plaintiff is a Nevada resident but alleges to have been a California resident when he filed the Complaint.  Plaintiff's address on the Complaint supports this contention, and Plaintiff has attested to it in the VAC.  Defendants have provided no contrary evidence except the fact that Plaintiff currently resides in Nevada, which Plaintiff does not contest.  The Court is satisfied that it is true by a preponderance of the evidence that Plaintiff resided in California at the commencement of the action.

Next, MM2 is a limited liability company, so its place of citizenship for the purposes of diversity are the places of citizenship of all of its members at the time of the commencement of the action. *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).  Plaintiff has attested via the VAC that Victor and Eyve are the sole members of MM2.  The Nevada Secretary of State's public records indicate that Victor and Eyve are the only members of MM2, and that they both reside in Nevada.  The only contrary contention Defendants make is that Nicole and Kimberly Szanto are also members of MM2, and that Nicole resides in California.  However, the public records do not list Nicole or Kimberly as members of MM2, and, in any case, the question is whether they were members when the case commenced.  The Court is convinced by a preponderance of the evidence that the members of MM2 at the time the case commenced were Nevada citizens, and there is therefore complete diversity.

### 2.  Insufficient Service of Process

MM2 next asks the Court to dismiss the VAC because it was served by Peter Szanto, a party to the action. *See* Fed. R. Civ. P. 12(b)(5).  The Certificate of Service Plaintiff has filed show this to be true. (*See* Cert. Serv., Oct. 14, 2013, ECF No. 20).  The federal rules permit personal service by "[a]ny person who is at least 18 years old and not a party may serve a summons and complaint." Fed.

1   R. Civ. P. 4(c)(2).  The federal rules also permit service by any method permitted under the state law

2   rules of the jurisdiction where the party is served, *see* Fed. R. Civ. P. 4(e)(1), but the Nevada rules do

3   not permit service by a party to the action, either, *see* Nev. R. Civ. P. 4(c).  MM2's only other

4   appearance apart from the present motion to dismiss for lack of jurisdiction was to move to set aside

5   the entry of default based upon insufficient service of the original Complaint.  The fact that MM2

6   has also asked the Court via the present motion to dismiss based upon the statute of limitations does

7   not render the 12(b)(5) defense waived.  Under the federal rules, a 12(b)(5) defense is only waived if

8   the movant failed to include the defense in its first motion under Rule 12. *See* Fed. R. Civ. P.

9   12(h)(1)(A).

10         In summary, there is yet no proof of proper service of the VAC, but the time to properly serve

11   it has not yet expired.  If a complaint is not served within 120 days of filing, a court may dismiss

12   without prejudice as to the relevant defendant or order proper service within a specified time.

13   *See* Fed. R. Civ. P. 4(m).  The VAC was filed on October 8, 2013.  Plaintiff must serve the VAC

14   properly within 120 days of that date or risk a Rule 4(m) dismissal, but although the service already

15   completed appears to have been improper, the motion to dismiss under Rule 12(b)(5) is not yet ripe

16   until this time limitation has expired.  Plaintiff may yet properly serve the VAC before the time limit

17   expires, and he has indicated in response that he intends to do so.  In the meantime, MM2 has no

18   duty to respond, and the Clerk should not enter default.

19         **3.      Statute of Limitations**

20         Finally, MM2 asks the Court to dismiss under the statute of limitations.  MM2 notes that

21   Nevada Revised Statutes section 112.230 provides for statutes of limitations of between one and four

22   years. *See* Nev. Rev. Stat. § 112.230(1)–(3).  MM2 argues that Plaintiff alleges the disputed transfer

23   occurred on November 25, 2005, over seven years after the Complaint was filed.  The Court finds it

24   unclear from the face of the VAC when the alleged fraudulent transfer(s) occurred.  They are alleged

25   to have been sometime after December 15, 2005, because that is the date Plaintiff alleges Victor and

26   Eyve formed the Defendant companies. (*See* V. Am. Compl. ¶¶ 19–19).[3]  The allegations in the VAC

27

28         [3]*See supra* note 1.

1    are consistent with acts occurring within the statute of limitations, and the Court will therefore not

2    determine the issue at the dismissal stage.  Plaintiff is correct that he may assert the discovery

3    doctrine, that no admission of discovery appears on the face of the VAC, and that the constructive

4    notice of the recordations of deeds that applies as between prior and subsequent purchasers for value

5    doe not apply to fraudulent conveyance claims for the purposes of the discovery rule, except

6    inasmuch as the fact of recordation might be admissible (though pitifully weak) evidence of actual

7    discovery. *See Crescent v. White*, 493 P.2d 1323, 1323 (Nev. 1972).

8         **4.    Miscellaneous**

9         Finally, the Court notes for the benefit of the parties going forward that it will not delve into

10   probate issues, *see Markham v. Allen*, 326 U.S. 490, 494 (1946) ("[A] federal court has no

11   jurisdiction to probate a will or administer an estate, the reason being that the equity jurisdiction

12   conferred by the Judiciary Act of 1789 . . . , which is that of the English Court of Chancery in 1789,

13   did not extend to probate matters."), and that the proper cause of action is not "fraudulent transfer," a

14   claim brought by a creditor against a debtor, *see generally Herup v. First Boston Fin., LLC*, 162 P.3d

15   870 (Nev. 2007), but rather "breach of fiduciary duty," the claim brought by a beneficiary against a

16   trustee, *see generally Riley v. Rockwell*, 747 P.2d 903 (Nev. 1987).  This means that Plaintiff should

17   amend to add Victor and Eyve as Defendants, or there will be no basis for a remedy against MM1 or

18   MM2.  After all, it is Victor and Eyve, not MM1 or MM2, that are alleged to have engaged in the

19   bad acts with respect to Trust assets.  Plaintiff should also amend to note that the claims are for a

20   breach of fiduciary duty (Victor) and aiding and abetting a breach of fiduciary duty (Eyve), not for a

21   "fraudulent conveyance."  He may retain that claim if he wishes, but he has neither pled nor implied

22   any facts supporting it.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Recuse (ECF No. 23), the Motions to Stay (ECF Nos. 27, 29), and the Motion to Dismiss (ECF No. 25) are DENIED.

IT IS FURTHER ORDERED that Plaintiff shall have leave to amend, as delineated *supra* within twenty-one (21) days of the entry of this Order into the electronic docket. Plaintiff need not amend if he does not wish to do so but may choose to serve and prosecute the VAC as it exists.

IT IS SO ORDERED.

Dated this 26th day of November, 2013.

_____
ROBERT C. JONES
United States District Judge

8