UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

PETER SZANTO,           )
                        )
    Plaintiff,          )
                        )
  v.                    )    3:11-cv-00394-RCJ-VPC
                        )
                        )    **ORDER**
MARINA MARKETPLACE 1, LLC et al., )
                        )
    Defendants.         )
_____)

    This case arises out of the alleged breach of fiduciary duties of Plaintiff's brother: a co-beneficiary and co-trustee of family trusts. Pending before the Court is a Motion to Dismiss (ECF No. 113) and a Motion to Set Aside Entry of Default (ECF No. 116).

## I.    FACTS AND PROCEDURAL HISTORY

    Plaintiff Peter Szanto and his brother Victor Szanto are beneficiaries and co-trustees of various Szanto family trusts (the "Trusts"). (*See* V. Am. Compl. ¶¶ 9, 15–16, Oct. 8, 2013, ECF No. 17). Defendants Marina Marketplace 1, LLC ("MM1") and Marina Marketplace 2, LLC ("MM2") are Nevada limited liability companies whose sole members are Victor and his wife Eyve. (*See id.* ¶¶ 10–11, 17–18). Victor and Eyve formed MM1 and MM2 ten days after Peter's and Victor's mother, Klara Szanto, passed away on December 2005. (*Id.* ¶¶ 19–19).[1] After Klara's death, Victor and Eyve overpowered the freewill of their father, Paul Szanto, in order to gain control of the Trusts.

---

[1] The Verified Amended Complaint lists two paragraphs numbered "19." (*See id.* 3:12–16).

(*Id.* ¶¶ 20, 31). Victor and Eyve used their control over the Trusts to purchase real property (the "Real Property") in Nevada that now belongs to Defendants MM1 and MM2. (*Id.* ¶ 21). Plaintiff alleges that the purchases of the Real Property were made via "fraudulent transfers" of assets from the Trusts. (*See id.* ¶¶ 23, 32). Plaintiff also alleges that Victor breached his fiduciary duty as trustee of the Trusts to obtain at least $3 million to purchase the Real Property for the Defendants he controls, and thus ultimately for his own benefit. (*Id.* ¶ 30). Plaintiff also alleges that Victor Szanto "loot[ed]" Paul Szanto's personal property worth at least $4 million, which may now also belong to Defendants MM1 or MM2. (*See id.* ¶¶ 33–33).[2]

The affidavit Plaintiff attaches to the Verified Amended Complaint ("VAC") helps to explain the source of the present family feud. Plaintiff attests that before their mother Klara died, Victor induced Plaintiff's son to sue Plaintiff in state court in California for the alleged failure to turn over certain gifts made to Plaintiff's son by others during Plaintiff's son's childhood. (*See* Peter Szanto Decl. ¶¶ 2–4, Oct. 6, 2013, ECF No. 17, at 13). Plaintiff prevailed in those actions, but in the meantime Victor and Eyve allegedly overpowered Paul's freewill in order to abscond with the Trusts' assets. (*See id.* ¶ 6). Plaintiff attests that Victor and Eyve conspired with one another to keep the 86-year-old Paul "permanently drugged, confused and away from all means of communication with anyone other than themselves." (*See id.* ¶ 8; V. Am. Compl. ¶ 30). Victor induced Paul to sign a $3 million deed of trust. (*See* Peter Szanto Decl. ¶ 11).

Plaintiff sued Defendants MM1 and MM2 *in pro se* in this Court in diversity. The Clerk entered default against both Defendants, and Plaintiff asked the Court to enter default judgment. The Court denied the motion, because the Complaint as filed was not sufficient to support a claim. That is, page three of the Complaint was missing, and it appeared that crucial allegations concerning the alleged wrongdoing, i.e., fraudulent transfer, were contained on that page in missing paragraphs fourteen through eighteen. The Court ruled that Plaintiff must file an amended complaint that included the relevant allegations and must attempt to serve that amended complaint upon Defendants. Defendant Marina Marketplace 2, LLC then filed a Motion to Set Aside Clerk's Default

---

[2]The Verified Amended Complaint lists two paragraphs numbered "33." (*See id.* 7:2–10).

(ECF No 16), which the Court granted because Plaintiff did not timely respond and because the Complaint was insufficient to state a claim.  The Court also ordered Plaintiff to show cause why the Complaint should not be dismissed for lack of subject matter jurisdiction because there was doubt as to complete diversity of the parties.

Plaintiff filed the VAC for fraudulent transfer, requesting the freeze of Defendants' assets, the appointment of a receiver for Defendants, the establishment of a constructive trust in Defendants' assets and eventual specific performance to transfer those assets to Plaintiff, as well as compensatory and punitive damages.  MM2 moved to dismiss the VAC based on:(1) lack of subject matter jurisdiction, i.e., lack of complete diversity; (2) insufficient service of process; and (3) the statute of limitations.  Plaintiff filed two motions to stay, as well as a motion to recuse.  The Court denied all of those motions.  As to the motion to dismiss, the Court found that a preponderance of the evidence available supported Plaintiff's assertion of complete diversity, that although Defendants had not yet been properly served, there remained time to serve them, and that the running of the statute of limitations was not evident on the face of the VAC and that the discovery doctrine could apply in the present case.

Plaintiff filed the Verified Second Amended Complaint ("VSAC"), adding Victor and Evye as Defendants.  The magistrate judge later dismissed several pending motions, including Victor's Motion to Dismiss (ECF No. 52) based on insufficient service of process, because Plaintiff had no standing to maintain the case while in Chapter 7 bankruptcy.  Plaintiff later obtained leave from the bankruptcy court to proceed here, and the parties filed several motions, including motions by Victor and Evye to dismiss for insufficient service of process.  In response, Plaintiff asked the Court to declare that service on Victor and Evye was proper.  The Court found that Victor and Evye had been properly served and therefore denied their motions to dismiss for insufficient service of process, but the Court did not enter declaratory judgment to that effect.  Plaintiff asked the Court to enter default against MM1 and MM2 under Rule 55.  Defendants Victor and Evye Szanto jointly moved to dismiss for improper service as to them.  The Court entered default against MM2, dismissed as against MM1 (because it had been dissolved too long ago to be sued under Nevada law), and denied Victor and Evye's motion to dismiss because a third-party process server, Jared Phillips, had attested

to having personally served them at the Starbucks coffee shop at 4000 S. Lake Tahoe Blvd., South Lake Tahoe, CA on April 11, 2014. (*See* ECF Nos. 89, 90).

**II.    DISCUSSION**

Victor and Evye have moved to dismiss for insufficient service of process, and MM2 has moved to set aside the entry of default against it. Victor and Evye both attest that on the date of alleged service upon them in South Lake Tahoe, they were in fact traveling abroad in India. They cannot account for Mr. Phillip's affidavit of service. Their motion turns upon whether Victor and Evye were in fact served at the Starbucks coffee shop in South Lake Tahoe, Nevada on April 11, 2014, as attested to by Phillips. If not, the time for service has run, and the Court will not grant any further extensions. That is, if the Court were to find that service was not effected at that time, then it would dismiss as against Victor and Evye.

The Court has held a lengthy evidentiary hearing and found by a preponderance of the evidence that Victor and Evye Szanto were not served in Nevada on April 11, 2014, but that they were in fact in India. As recounted on the record at the evidentiary hearing, their passports show arrivals in New Delhi on April 11, 2014 and a departure form India on April 30, 2014. Because their visas were for fixed dates, and not for a fixed time period within broader dates, there was no need for Indian customs officials to mark "used" on their visas or in their passports. The additional evidence of tickets, hotel invoices, and the purchase of a rug in India was also valuable. Plaintiff provided no evidence to the contrary at the hearing in addition to the affidavit of service. That is, he provided no witnesses who saw Victor or Evye in Nevada on the alleged date of service, no evidence that the documents submitted in evidence were falsified, and, most importantly, he did not produce the process server himself to testify. The Court must conclude that, at best, Plaintiff's process server was mistaken about who he served, if he in fact served anyone. The Court therefore grants the motion to dismiss. Nor will the Court grant leave to amend. Plaintiff has had years to properly serve Victor and Evye Szanto and has not done so.

Next, MM2 asks the Court to set aside the default entered against it. The Court finds that

MM2's neglect was not excusable,³ but that it has potentially meritorious defenses, and that it desires to defend on the merits.  MM2 has not yet answered.  Normally, the Court would order MM2 to answer forthwith.  However, as the Court noted in its November 26, 2013 order, the gravamen of this case is the alleged breach of fiduciary duty by Victor and Evye Szanto.  But they have been dismissed, and there is no independent claim of wrongdoing against MM2 as an entity, which is simply a business entity owned by Victor and Evye whose assets might have been reachable to satisfy any judgment against Victor and Evye for their alleged breach of fiduciary duty.  Because Victor and Evye have been dismissed as Defendants, Plaintiff shall therefore show cause why the remainder of the case should not be dismissed.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 113) is GRANTED. Victor and Evye Szanto are dismissed as parties.

IT IS FURTHER ORDERED that the Motion to Set Aside Entry of Default (ECF No. 116) is GRANTED.

IT IS FURTHER ORDERED that the Motions for Entry of Clerk's Default (ECF Nos. 111, 112), the Motion to Compel (ECF No. 119), and the Motions to Strike (ECF Nos. 107, 125) are DENIED.

IT IS FURTHER ORDERED that Plaintiff shall show cause within fourteen (14) days of the entry of this Order into the electronic docket why the remainder of the case should not be dismissed.

IT IS SO ORDERED.

Dated:  This 29th day of July, 2014.

_____
ROBERT C. JONES
United States District Judge

---

³Counsel's claim that he believed the filing of a request for an extension of time "stayed" the time to respond is wrong.  Counsel should disavow himself of the notion that a request to extend time can stay a deadline before approval.