# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| PETER SZANTO, | ) |
|     Plaintiff, | ) |
|     v. | )    3:11-cv-00394-RCJ-VPC |
| MARINA MARKETPLACE 1, LLC et al., | )    **ORDER** |
|     Defendants. | ) |

This case arises out of the alleged breach of fiduciary duties of Plaintiff's brother: a co-beneficiary and co-trustee of family trusts. Pending before the Court is Plaintiff's Response (ECF No. 141) to the Court's order to Show Cause (ECF No. 137), a Motion to Dismiss (ECF No. 139), a Motion to Strike (ECF No. 144), and a Motion to Reconsider (ECF No. 153).

## I.    FACTS AND PROCEDURAL HISTORY

Plaintiff Peter Szanto and his brother Victor Szanto are beneficiaries and co-trustees of various Szanto family trusts (the "Trusts"). (*See* V. Am. Compl. ¶¶ 9, 15–16, Oct. 8, 2013, ECF No. 17). Defendants Marina Marketplace 1, LLC ("MM1") and Marina Marketplace 2, LLC ("MM2") are Nevada limited liability companies whose sole members are Victor and his wife Eyve. (*See id.* ¶¶ 10–11, 17–18). Victor and Eyve formed MM1 and MM2 ten days after Peter's and Victor's mother, Klara Szanto, passed away on December 2005. (*Id.* ¶¶ 19–19).[1] After Klara's death, Victor

---

[1] The Verified Amended Complaint lists two paragraphs numbered "19." (*See id.* 3:12–16).

and Eyve overpowered the freewill of their father, Paul Szanto, in order to gain control of the Trusts. (*Id.* ¶¶ 20, 31). Victor and Eyve used their control over the Trusts to purchase real property (the "Real Property") in Nevada that now belongs to Defendants MM1 and MM2. (*Id.* ¶ 21). Plaintiff alleges that the purchases of the Real Property were made via "fraudulent transfers" of assets from the Trusts. (*See id.* ¶¶ 23, 32). Plaintiff also alleges that Victor breached his fiduciary duty as trustee of the Trusts to obtain at least $3 million to purchase the Real Property for the Defendants he controls, and thus ultimately for his own benefit. (*Id.* ¶ 30). Plaintiff also alleges that Victor Szanto "loot[ed]" Paul Szanto's personal property worth at least $4 million, which may now also belong to Defendants MM1 or MM2. (*See id.* ¶¶ 33–33).[2]

The affidavit Plaintiff attaches to the Verified Amended Complaint ("VAC") helps to explain the source of the present family feud. Plaintiff attests that before their mother Klara died, Victor induced Plaintiff's son to sue Plaintiff in state court in California for the alleged failure to turn over certain gifts made to Plaintiff's son by others during Plaintiff's son's childhood. (*See* Peter Szanto Decl. ¶¶ 2–4, Oct. 6, 2013, ECF No. 17, at 13). Plaintiff prevailed in those actions, but in the meantime Victor and Eyve allegedly overpowered Paul's freewill in order to abscond with the Trusts' assets. (*See id.* ¶ 6). Plaintiff attests that Victor and Eyve conspired with one another to keep the 86-year-old Paul "permanently drugged, confused and away from all means of communication with anyone other than themselves." (*See id.* ¶ 8; V. Am. Compl. ¶ 30). Victor induced Paul to sign a $3 million deed of trust. (*See* Peter Szanto Decl. ¶ 11).

Plaintiff sued Defendants MM1 and MM2 *in pro se* in this Court in diversity. The Clerk entered default against both Defendants, and Plaintiff asked the Court to enter default judgment. The Court denied the motion, because the Complaint as filed was not sufficient to support a claim. That is, page three of the Complaint was missing, and it appeared that crucial allegations concerning the alleged wrongdoing, i.e., fraudulent transfer, were contained on that page in missing paragraphs fourteen through eighteen. The Court ruled that Plaintiff must file an amended complaint that included the relevant allegations and must attempt to serve that amended complaint upon

---

[2] The Verified Amended Complaint lists two paragraphs numbered "33." (*See id.* 7:2–10).

2

Defendants. Defendant Marina Marketplace 2, LLC then filed a Motion to Set Aside Clerk's Default (ECF No 16), which the Court granted because Plaintiff did not timely respond and because the Complaint was insufficient to state a claim. The Court also ordered Plaintiff to show cause why the Complaint should not be dismissed for lack of subject matter jurisdiction because there was doubt as to complete diversity of the parties.

Plaintiff filed the VAC for fraudulent transfer, requesting the freeze of Defendants' assets, the appointment of a receiver for Defendants, the establishment of a constructive trust in Defendants' assets and eventual specific performance to transfer those assets to Plaintiff, as well as compensatory and punitive damages. MM2 moved to dismiss the VAC based on:(1) lack of subject matter jurisdiction, i.e., lack of complete diversity; (2) insufficient service of process; and (3) the statute of limitations. Plaintiff filed two motions to stay, as well as a motion to recuse. The Court denied all of those motions. As to the motion to dismiss, the Court found that a preponderance of the evidence available supported Plaintiff's assertion of complete diversity, that although Defendants had not yet been properly served, there remained time to serve them, and that the running of the statute of limitations was not evident on the face of the VAC and that the discovery doctrine could apply in the present case.

Plaintiff filed the Verified Second Amended Complaint ("VSAC"), adding Victor and Evye as Defendants. The magistrate judge later dismissed several pending motions, including Victor's Motion to Dismiss (ECF No. 52) based on insufficient service of process, because Plaintiff had no standing to maintain the case while in Chapter 7 bankruptcy. Plaintiff later obtained leave from the bankruptcy court to proceed here, and the parties filed several motions, including motions by Victor and Evye to dismiss for insufficient service of process. In response, Plaintiff asked the Court to declare that service on Victor and Evye was proper. The Court found that Victor and Evye had been properly served and therefore denied their motions to dismiss for insufficient service of process, but the Court did not enter declaratory judgment to that effect. Plaintiff asked the Court to enter default against MM1 and MM2 under Rule 55. Defendants Victor and Evye Szanto jointly moved to dismiss for improper service as to them. The Court entered default against MM2, dismissed as against MM1 (because it had been dissolved too long ago to be sued under Nevada law), and denied

3

Victor and Evye's motion to dismiss because a third-party process server, Jared Phillips, had attested to having personally served them at the Starbucks coffee shop at 4000 S. Lake Tahoe Blvd., South Lake Tahoe, California on April 11, 2014. (*See* ECF Nos. 89, 90).

Victor and Evye moved to dismiss for insufficient service of process, and MM2 moved to set aside the entry of default against it.  After a lengthy evidentiary hearing, the Court granted Victor and Evye's motion to dismiss, without leave to amend, because it appeared clear that Victor and Evye were in India on April 11, 2014, when they were allegedly served.  The Court found that MM2's neglect in failing to answer was not excusable, but that it had potentially meritorious defenses, and that it desired to defend on the merits.  The Court noted that normally it would order MM2 to answer forthwith; however, the gravamen of this case is the alleged breach of fiduciary duty by Victor and Evye Szanto.  Since they had been dismissed, and there was no independent claim of wrongdoing against MM2 as an entity, which is simply a business entity owned by Victor and Evye whose assets might have been reachable to satisfy any judgment against Victor and Evye for their alleged breach of fiduciary duty, the Court ordered Plaintiff to show cause why the remainder of the case should not be dismissed.

## II. DISCUSSION

In response to the order to show cause why the case should not be dismissed, Plaintiff cites to sections of the VSAC indicating that MM2 was the recipient of alleged fraudulent transfers by Victor and Evye.  Plaintiff therefore concludes that he has alleged wrongdoing by MM2.  But Plaintiff has not addressed the core issue that MM2 is not alleged to have engaged in any wrongdoing, but only Victor and Evye. In order for the Court to determine that the transfer was fraudulent, it would first have to determine that Plaintiff in fact had a claim to the funds, i.e., that Victor and Evye are debtors to Plaintiff with respect to the funds. *See* Nev. Rev. Stat. § 112.180(1)(a).  But in order to determine the existence of the alleged debt, the Court would first have to find that Victor and Evye in fact wrongfully gained control over the Trusts and other property that otherwise would have gone to Plaintiff.  Plaintiff can no longer prove those underlying facts, because Victor and Evye have prevailed against Plaintiff.  Those issues are precluded.

Plaintiff's motion to reconsider, however, if granted, will moot the order to show cause,

because it seeks to show that Victor and Evye were in fact served not on April 11, 2014, but on April 1, 2014, when they do not deny they were not yet in India. Specifically, Plaintiff's process server, Jared Phillips, has now attested that he in fact served Victor and Evye at the Starbucks in South Lake Tahoe, California on April first, not the eleventh, and that he originally attested as to having served them on the eleventh due to having misread his "sloppy" handwriting from his original notes. (*See* Phillips Decl., Aug. 23, 2014, ECF No. 153-1).[3] Phillips has attached photographs of Victor and Evye, attesting that those are the persons he served. (*See id.*).

The Court may consider the motion under Rule 60(b)(1). If the Court were to credit Phillips's testimony, the error would be correctable as inadvertence under the rule, and the Court would reverse its dismissals of Victor and Evye for failure to serve process. Furthermore, the Court might also sanction Victor and Evye for making false statements to the Court under oath. (*See* E. Szanto Decl., May 9, 2014, ECF No. 113-1 (attesting not only that she was in India on April 11, 2014, but that she had never been served as of the date of her affidavit); *See* V. Szanto Decl., May 9, 2004, ECF No. 113-2 (same)).

In summary, the Court will hold another evidentiary hearing on the present motion to reconsider. The Court will grant the motion to strike the "third amended complaint," because there was no leave to file it. Finally, the Court denies Plaintiff's second motion for recusal. Plaintiff's motion is based upon adverse rulings; he identifies no legitimate grounds for recusal. Even assuming for the sake of argument that the Court had made legal errors in this case, legal error does not constitute grounds for recusal without a showing of external personal bias:

> Texaco requests a new trial because of an alleged judicial bias in favor of Hasbrouck. A judge is required to disqualify himself if his impartiality might reasonably be questioned, or if he has a personal bias or prejudice for or against a party. The bias must stem from an extrajudicial source and not be based solely on information gained in the course of the proceedings. However, Texaco points to no extrajudicial basis for the alleged bias and in fact offers no evidence that the trial judge acted in less than a wholly impartial manner. Texaco supports its allegations of bias merely by pointing to alleged errors at trial in refusing a request to disqualify jurors, formulating preliminary and final jury instructions, and overruling defense objections. Even if these ruling[s] were erroneous, and we do not suggest that they were, they could not justify a finding of

---

[3] Although titled as an affidavit, the document is in fact a declaration, because there is no indication therein of any oath having been administered, but it is signed under acknowledgment of the penalties of perjury.

judicial bias. Texaco's claim of judicial bias is wholly without merit.
*Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034, 1045–46 (9th Cir. 1987) (citations omitted).  Plaintiff's arguments concerning the Court's alleged legal error at the previous evidentiary hearing are without merit.  In addition to reiterating the rejected arguments from his previous motion to recuse and Plaintiff's frankly weird argument that the Court's exclamation of "Jeez Louise" when Plaintiff indicated he had not brought the process server or any other witness to the evidentiary hearing indicated some kind of religious bias, Plaintiff essentially appears to argue that the Court's jurisdiction under Article III does not extend to the examination of Defendants' passports as evidence of their whereabouts, because immigration regulation is an executive function.  But the Court has jurisdiction over the present case, and the stamps in the passports were relevant evidence of whether Defendants had been properly served.  The Court was able to examine the passports as evidence of that fact without encroaching upon the executive function of immigration regulation.  The Court did not purport to issue or deny any application for a visa or perform any other similar executive function.  Plaintiff also alleges that the Court "tricked" him into appearing for the hearing and then asking whether he had brought his process server to testify.  Plaintiff also alleges he was "astonish[ed]" that the Court was concerned about the process server's testimony and Plaintiff's failure to procure him as a witness at the evidentiary hearing.  Plaintiff should not have been surprised.  The purpose of the evidentiary hearing was clear: to determine whether Defendants had been served in light of the process server's affidavit of service and Defendants' contrary affidavits that they had not been served and were in fact absent from the country on the date of alleged service.  Quite obviously, the only known witness whose testimony could overcome Defendants' denial of having been served at the hearing would be the process server.

    In response, Defendants first argue that the motion should not be considered because there is no newly discovered evidence or error of law by the Court.  But the Court does not perceive the motion as based on Rule 59(e).  It is based on Rule 60(b)(1), and the inadvertence of the process server in identifying the date of service is sufficient to invoke the rule.  Next, and more importantly, Defendants (and a third party who was with them on that date) attest that although they were not in India on April 1, 2014, they were never in South Lake Tahoe on that date but in Red Bluff,

California, 230 miles away, from March 31, 2014 until April 2, 2014, and that they were not served on April 1, 2014 anywhere. (*See* E. Szanto Aff., Sept. 9, 2014, ECF No. 157-1; V. Szanto Aff., Sept. 9, 2014, ECF No. 157-2; Bell Aff., Sept. 10, 2014, ECF No. 157-3). In light of the competing declaration and affidavits, the Court will permit Plaintiff one final attempt to convince the Court that Defendants were timely served. Plaintiff is well advised to procure his process server's attendance at the next (and final) evidentiary hearing.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Strike (ECF No. 144) is GRANTED and the pleading filed at ECF No. 142 is STRICKEN.

IT IS FURTHER ORDERED that the Motion to Dismiss (ECF No. 139) is denied, without prejudice. The Court intends to dismiss after the evidentiary hearing based on its own order to show cause if Plaintiff does not prevail on his motion to reconsider, but if Plaintiff were to prevail on that motion, the court would both decline to dismiss based on the order to show cause and deny Defendants' motion to dismiss.

IT IS FURTHER ORDERED that the Motion to Recuse (ECF No. 154) is DENIED.

IT IS FURTHER ORDERED that the parties and Mr. Phillips shall appear at an evidentiary hearing to be held at 1:30 P.M., Monday, October 27, 2014, Courtroom 6 of the Bruce R. Thomson Courthouse in Reno, Nevada.

IT IS SO ORDERED.

Dated: This 15th day of October, 2014.

_____
ROBERT C. JONES
United States District Judge